1  BRYAN CAVE LLP, #00145700
2  Robert W. Shely, #014261
   Gregory B. Iannelli, #026549
3  Two North Central Avenue, Suite 2200
   Phoenix, Arizona  85004-4406
4  Telephone:  (602) 364-7000
   Facsimile:  (602) 364-7070
5  rwshely@bryancave.com
6  gregory.iannelli@bryancave.com

7  Attorneys for Defendants BAC Home
8  Loans Servicing LP and
   Bank of New York (CWMBS 2006-HYB1) GR2
9

10           IN THE UNITED STATES DISTRICT COURT
11
12              FOR THE DISTRICT OF ARIZONA

13
   YVONNE DERRY,                          No. 2:10-cv-02211-PHX-ROS
14
            Plaintiff,
15                                         MOTION FOR JUDGMENT ON
16   vs.                                   THE PLEADINGS

17   BANK OF NEW YORK; BAC HOME
18   LOANS SERVICING LP,                   (Hon. Roslyn O. Silver)

19          Defendants.
20

21        Defendants BAC Home Loans Servicing LP ("BACHLS") and Bank of New York
22   (CWMBS 2006-HYB1) GR2 (improperly named as "Bank of New York") ("BONY")
23   respectfully request that the Court enter judgment on the pleadings against Plaintiff
24   Yvonne Derry.  Her Complaint fails to state any claim upon which relief may be granted.
25   This is Ms. Derry's third lawsuit against concerning a mortgage loan; she voluntarily
26   dismissed the first two after losing motions to dismiss.  The new Complaint offers
27   nothing new.  Indeed, it fails to assert *any* facts concerning Ms. Derry's loan, other than
28   random numbers and lists of fees, which do not suggest any wrongdoing.  Ms. Derry

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA  85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   cannot expect to continue harassing Defendants in the courts by filing the same frivolous

2   allegations every time a previous attempt fails.   The Court should dismiss with

3   prejudice.[1]

4   **MEMORANDUM OF POINTS AND AUTHORITIES**

5   **I.      BACKGROUND.**

6          Ms. Derry's complaint identifies her property address ("Property"), alleges that

7   she refinanced a loan secured by the Property ("Loan") with an unidentified lender at an

8   unidentified time, describes the amount of the Loan and its interest rate, and sets forth a

9   list of fees charged at the closing.  [Complaint at 1, 7, 11–12]  This is the entire factual

10  substance of the Complaint.  The remainder consists of sprawling speculation about the

11  modern financial system with no concrete allegations of wrongdoing or even a

12  connection to the Loan.[2]

13         Defendants' records reveal that on November 29, 2005, Ms. Derry borrowed

14  $174,200 from non-party American Brokers Conduit.  [Exhibit A]  A Deed of Trust

15  secures the Loan. [Exhibit B]  BACHLS services the Loan and BONY is the beneficiary

16  of the Deed of Trust.  The Loan has been in default since October 2009.  The trustee

17  under the Deed of Trust noticed a trustee's sale to take place on April 27, 2010.  [Exhibit

18  C]  That sale was postponed multiple times and still has not been held.

19         The Complaint alleges numerous state and federal causes of action against

20  Defendants, an unidentified lender, and/or unspecified non-parties.  Among her confusing

21  allegations, Ms. Derry asserts that Defendants (and possibly various non-parties)

22  

23         [1] Defendants have answered the Complaint and moved for judgment on the

24  pleadings instead of moving to dismiss the Complaint to prevent Plaintiff from
    voluntarily dismissing the case and avoiding a final adjudication, as she has done in two

25  prior cases.

26         [2] The Complaint is a form document copied from the Internet.  It has been filed in
    at least two other cases pending before this Court.  See Chianella v. BAC Home Loans

27  Servicing LP, No. 2:10-cv-1764-PHX-ROS (Aug. 18, 2010); Ryan v. BAC Home Loans
    Servicing LP, No. 2:10-cv-2197-PHX-NVW (Oct. 15, 2010).

28

committed various acts of fraud, criminally conspired against her, breached their fiduciary duties, violated RESPA and TILA, were unjustly enriched, breached the implied contractual covenant of good faith and fair dealing, and intentionally subjected her to severe emotional distress.  [Complaint at 1–2, 9, 10–14, 19–23]  None of these accusations are supported by any allegations of fact.

Ms. Derry also alleges that Defendants failed to produce the "original promissory note" or "contract," are not the "real party in interest," and lack "standing" regarding the Loan.   [Complaint at 2, 6–9]   Finally, Ms. Derry makes confusing, admittedly "outrageous," and sweeping indictments of the entire mortgage industry.  [Complaint at 2–6]  In so doing, she alleges that the misdeeds of various industry participants somehow render the Loan unenforceable and entitle her to a windfall through "re-conveyence of the subject property" to her, presumably free and clear of any liens or debt obligations. [Complaint at 7]

This is Ms. Derry's third challenge to her mortgage obligations.  On February 2, 2010, Judge Wake dismissed a similar complaint ("First Action") for failure to state a claim on which relief could be granted.  Ms. Derry filed an amended complaint suffering from all the same deficiencies as her original pleading, which the defendants moved to dismiss.   Ms. Derry avoided final adjudication of the First Action by voluntarily dismissing the case without prejudice.[3]

Just two days after the dismissal of her first case, this Court dismissed Ms. Derry's second complaint ("Second Action"), which had been pending at the same time.  Ms. Derry filed an amended complaint suffering from the same deficiencies, and the defendants moved to dismiss.   Ms. Derry voluntarily dismissed the case without prejudice.[4]  Because Ms. Derry never identified the precise loan at issue in the Second

_____

[3] See Derry v. Countrywide Home Loans Inc., No. 2:09-cv-02549-PHX-NVW (12/7/09), Doc. Nos. 20–27.

[4] See Derry v. Citibank N.A., No. 2:09-cv-02519-PHX-ROS (12/3/09), Doc. Nos. 28–33, 38, 43.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   Action, it is unclear whether the Second Action and this action concern the same loan, or

2   whether the First and Second Actions concerned the same loan.  The First Action and this

3   action concern different loans.

4   **II.     LEGAL STANDARD.**

5          The defense of failure to state a claim on which relief may be granted may be

6   raised in a motion for judgment on the pleadings.  Fed. R. Civ. P. 12(h)(2)(B); accord

7   Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (recognizing that "Rule 12(h)(2)

8   specifically authorizes use of the [12(c)] motion to raise the defense of failure to state a

9   claim").   To avoid dismissal, "a complaint must contain sufficient factual matter,

10  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

11  Iqbal, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly,

12  550 U.S. 544, 570 (2007)) (reversing denial of motion to dismiss).  "[A] plaintiff's

13  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

14  labels and conclusions, and a formulaic recitation of the elements of a cause of action will

15  not do."  Twombly, 550 U.S. at 555 (citation omitted).  A plaintiff cannot meet her

16  burden simply by contending that she "might later establish some 'set of [undisclosed]

17  facts' to support recovery."  Id. at 561.  Rather, "[a] claim has facial plausibility when the

18  plaintiff pleads factual content that allows the court to draw the reasonable inference that

19  the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.  It is not

20  sufficient if the complaint merely establishes a "sheer possibility" that the defendant has

21  acted unlawfully.  "Where a complaint pleads facts that are 'merely consistent with' a

22  defendant's liability, it 'stops short of the line between possibility and plausibility of

23  entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  To determine whether a

24  complaint states a plausible claim for relief, the court must rely on its "judicial

25  experience and common sense."  Id. at 1950.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

## III.   ARGUMENT.

### A.     Ms. Derry Fails To Make A Short And Plain Statement Of Her Claim.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The plaintiff's statement of her claim must give the defendant "fair notice of what the claim is and the ground upon which it rests."  Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003).  Each allegation "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  Complaints that are "verbose, confusing and conclusory" violate Rule 8 and may be dismissed.  See Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673–74 (9th Cir. 1981).

The Complaint does not contain a short and plain statement of any claim.  Instead, it is a collection of meandering allegations and confusing legal theories, and duplicates exactly other form documents filed in this Court, save for the identification of Ms. Derry's property.  None of the legal theories asserted in the Complaint are supported by any factual allegations or connected to Ms. Derry's particular loan.

Nor can Defendants determine what causes of action Ms. Derry intended to assert, or against which defendants she intended to assert them.  At various places, the Complaint impermissibly asserts generalized allegations against an unspecified "Lender" and/or unspecified "Defendants."  [See, e.g., Complaint at 1, 6–7, 8–9, 18, 22]  This alone is cause to dismiss the Complaint, because Rule 8 requires that each defendant be placed on notice of the particular charges against it.  See Arikat v. J.P. Morgan Chase & Co., 430 F. Supp. 2d 1013, 1023 (N.D. Cal. 2006) (dismissing generalized allegations against all thirteen defendants as "improper").

Additionally, many of the allegations appear related to the origination of the Loan.  As reflected in the Deed of Trust, BACHLS is not the original lender or successor to the original lender—it merely services the Loan.  [See Exhibit A]  Ms. Derry makes no allegation that BACHLS originated or was otherwise involved in the making of the Loan.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   BACHLS is thus not the proper defendant for any alleged misconduct related to the loan

2   origination process.

3       **B.    Ms. Derry's "Show Me The Note" Theory And Related Arguments**

4              **Lack Merit.**

5       Ms. Derry alleges that "Defendants" failed to produce the "original promissory

6   note" or "contract," are not the "real party in interest," and lack "standing" regarding the

7   Loan and foreclosure of the Property.  [Complaint at 2, 6–9]  The "show me the note"

8   theory has no merit.  See Diessner v. MERS, 618 F. Supp. 2d 1184, 1187–88 (D. Ariz.

9   2009), aff'd, 2010 WL 2464899 (9th Cir. June 17, 2010) ("Arizona's non-judicial

10  foreclosure statute does not require presentation of the original note before commencing

11  foreclosure proceedings"); Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp.

12  2d 1178, 1181 (D. Ariz. 2009) (dismissing complaint based on "show me the note"

13  theory).

14      Similarly, no "real party in interest" rule applies to non-judicial foreclosures under

15  a deed of trust.  The term "real party in interest" is found in Federal Rule of Civil

16  Procedure 17 and is relevant in the context of parties pursuing federal lawsuits.  See Fed.

17  R. Civ. P. 17(a).  A trustee's sale held by virtue of a power of sale in a Deed of Trust is a

18  non-judicial foreclosure process governed exclusively by A.R.S. §§ 33-801–821, making

19  Rule 17(a) irrelevant.  Ms. Derry is equally mistaken that there is a "standing"

20  requirement, because "standing" also relates only to lawsuits pursued in court.  ARS §

21  33-807(A) is clear that the existence of a deed of trust confers inherent authority on the

22  trustee to sell the trust property upon the borrower's default.

23      **C.    Ms. Derry Fails To State A Claim For Breach Of Fiduciary Duty.**

24      Ms. Derry alleges that "Defendants Agent, appraiser, trustee, Lender, et al, and

25  each of them, owed Petitioner a fiduciary duty of care with respect to the mortgage loan

26  transactions," and that "Defendants" breached their fiduciary duties by not complying

27  with "all applicable laws governing the loan transactions."  [Complaint at 19]  Ms. Derry

28

1   fails to support these conclusory allegations with any facts, fails to identify any duty

2   BACHLS (which was not involved in the origination) allegedly owed her, and fails to

3   specify how any defendant supposedly breached any such duty.  Nor could she, because a

4   lender does not owe a borrower any fiduciary duty in Arizona.  Renteria v. United States,

5   452 F .Supp. 2d 910, 922–23 (D. Ariz. 2006) ("[n]o . . . duty exists for a lender to

6   determine the borrower's ability to repay the loan"); McAlister v. Citibank, 171 Ariz.

7   207, 212, 829 P.2d 1253, 1258 (Ct. App. 1992) (affirming summary judgment for

8   defendant bank on breach of fiduciary duty claim brought by depositor).

9       Even if Ms. Derry could provide facts showing that defendants owed her a

10  fiduciary duty and breached it, her claim would be untimely under Arizona's two-year

11  statute of limitations.  A.R.S. § 12-542; CDT, Inc. v. Addison, Roberts and Ludwig,

12  C.P.A., P.C., 198 Ariz. 173, 175, 7 P.3d 979, 981 (Ct. App. 2000).

13      **D.    Ms. Derry Fails To State A Claim For Negligence Or Negligence Per
14          Se.**

15      Ms. Derry alleges that unspecified "Defendants owed a general duty of care . . . to

16  properly perform due diligence as to the loans [sic]" and "owed a duty of care under

17  TILA, HOEPA, RESPA."  [Complaint at 20]  All of Ms. Derry's negligence allegations

18  appear related to the origination of the Loan.

19      To establish negligence, Ms. Derry must allege "(1) a duty requiring the defendant

20  to conform to a certain standard of care; (2) a breach by the defendant of that standard;

21  (3) a causal connection between the defendant's conduct and the resulting injury; and (4)

22  actual damages."  Diaz v. Phoenix Lubrication Serv., Inc., 224 Ariz. 335, 338, 230 P.3d

23  718, 721 (Ct. App. 2010) (internal citation omitted).  Beyond offering insufficient facts to

24  support any of the required negligence elements, Ms. Derry fails to identify which

25  specific party allegedly acted negligently or how BACHLS could have acted negligently

26  with respect to the origination.

27      Further, Ms. Derry's negligence allegations based on TILA, HOEPA, and RESPA

28  fail because a lender cannot be negligent under those statutes.  A lender either complies

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1    with each applicable statute or violates it.  Ms. Derry fails to plausibly allege that her

2    lender violated any statute.

3         **E.    Ms. Derry Does Not Plead Any Fraud Claims With Particularity.**

4         At various places in the Complaint, Ms. Derry vaguely alleges that "Defendants"

5    committed various types of fraud.  [See, e.g., Complaint at 1, 6–7, 9, 21]  Fraud must be

6    pleaded with particularity.  Fed. R. Civ. P. 9(b).  Under Arizona law, Ms. Derry must

7    allege (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge

8    of its falsity or ignorance of its truth; (5) the speaker's intent it should be acted upon by

9    the person and in a manner reasonably contemplated; (6) the hearer's ignorance of its

10   falsity; (7) her reliance on its truth; (8) her right to rely thereon; and (9) her consequent

11   and proximate injury.  Green v. Lisa Frank, Inc., 221 Ariz. 138, 156, 211 P.3d 16, 34 (Ct.

12   App. 2009).  As courts uniformly recognize, "[b]road claims without factual support fail

13   to adequately give defendants notice of the particular misconduct alleged to constitute

14   fraud and, consequently, fail to satisfy FRCP 9(b)."  Hearn v. R.J. Reynolds Tobacco Co.,

15   279 F. Supp. 2d 1096, 1113 (D. Ariz. 2003) (internal citation omitted) (dismissing

16   plaintiffs' fraud claims for failure to plead with particularity).

17        Ms. Derry does not meaningfully identify what the allegedly false representations

18   were, how they were material, whether or how any defendant made them, why she relied

19   on them, or why that reliance was reasonable.  Further, many of her fraud claims appear

20   related to loan origination and thus cannot apply to BACHLS.  [See Complaint at 6–7]

21        **F.    Ms. Derry's Claim For Breach Of The Implied Covenant Of Good
22               Faith And Fair Dealing Fails As A Matter Of Law.**

23        Ms. Derry appears to have copied her claim for breach of the implied covenant of

24   good faith and fair dealing from a response to a motion to dismiss.  [See Compl. at 21–

25   22]  Defendants thus cannot know what allegations, if any, she even intended.

26   Regardless, Ms. Derry must sufficiently plead that she entered into a contract with a

27   defendant before the duty of good faith may attach.  Rawlings v. Apodaca, 151 Ariz. 149,

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

153, 726 P.2d 565, 569 (1986) (en banc) ("The duty arises by virtue of a contractual relationship").  Ms. Derry has not alleged that BACHLS, which is merely the loan servicer, was a party to the contractual documents underlying the Loan.  She cannot therefore allege that BACHLS breached any contractual covenant, let alone the duty of good faith.  Nor has she pleaded anything to suggest that any defendant breached either an express contractual term or any implied covenant.

### G.    Ms. Derry Fails To State A TILA Claim.

The Complaint includes a heading alleging "violation" of the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.) ("TILA") but provides nothing in support.  [Complaint at 22]  Defendants cannot determine where else in the Complaint Ms. Derry may have intended to assert a TILA claim.  She alleges no facts and in no way identifies how Defendants violated TILA.  Further, the statute of limitations bars any intended TILA allegations.  Section 1640(e) of TILA provides that TILA actions must be brought "within one year from the date of the occurrence of the violation."  The date of violation refers to the date "the loan documents were signed."  Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003) (affirming district court's dismissal of plaintiffs' TILA damages claim as time-barred).  Ms. Derry executed the Deed of Trust and other relevant loan documents in 2005, rendering any intended TILA claim time-barred.

### H.    Ms. Derry Fails To State A Claim For Intentional Infliction Of Emotional Distress.

Ms. Derry contends that conduct by unspecified "Defendants" caused her to "suffer severe emotional stress" and "economic and non economic harm and detriment."  [Complaint at 22–23]  Ms. Derry must prove three elements to succeed in a claim for IIED.  Citizen Publishing Co. v. Miller, 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005) (en banc).  The defendant's conduct (i) must be "extreme and outrageous," (ii) must "either intend to cause emotional distress or recklessly disregard the near certainty that such

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

distress will result from his conduct," and (iii) must result in "severe emotional distress." Id. (internal quotations and citations omitted).

Ms. Derry simply recites the IIED elements, baldly asserts a favorable legal conclusion for each element, and offers no factual support.  [Complaint at 22–23]  Her failure to plead any facts showing that any defendant intentionally, or with reckless disregard, caused Ms. Derry emotional distress, or any facts regarding the severity of such distress, renders her IIED allegations baseless.

## I.    Ms. Derry Fails To State A Claim For Conspiracy.

Ms. Derry alleges that unspecified "Defendants, by and through Defendants' Agents, conspired with other Defendants, et al, toward a criminal conspiracy to defraud Petitioner."  [Complaint at 9]  There is no independent tort of conspiracy in Arizona. Baker ex rel. Hall Brake Supply Inc. v. Stewart Title & Trust of Phoenix Inc., 197 Ariz. 535, 545, 5 P.3d 249, 259 (Ct. App. 2000) ("A civil conspiracy requires an underlying tort which the alleged conspirators agreed to commit.").  The putative conspiracy claim must fail because, for the reasons already set forth, Ms. Derry has not adequately alleged fraud or any other underlying unlawful conduct.

A conspiracy must also be pleaded with particularity.  "[A] plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement.  It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement."  S. Union Co. v. Sw. Gas Corp., 165 F. Supp. 2nd 1010, 1020–21 (D. Ariz. 2001); see also DM Research Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) (cited with approval in Twombly, 550 U.S. at 557) ("But terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement—but a court is not required to accept such terms as a

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA  85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1    sufficient basis for a complaint.  The case law on this point is ample.").  Ms. Derry has

2    made no "factually specific allegations" that Defendants conspired to wrong her.

3    Accordingly, she fails to state a claim for conspiracy.

4        **J.    Ms. Derry Fails To State A RESPA Claim.**

5        The Real Estate Settlement Procedures Act (12 U.S.C. §§ 2601 et seq.)

6    ("RESPA") "requires mortgage lenders to disclose the costs associated with real estate

7    closing, prohibits fee-splitting in connection with settlement services except for services

8    actually performed, and prohibits giving or accepting anything of value in exchange for

9    referrals except in certain circumstances."  Diessner v. MERS, 618 F. Supp. 2d 1184,

10   1189 (D. Ariz. 2009), aff'd, 2010 WL 2464899 (9th Cir. June 17, 2010) (internal quotes

11   and citations omitted).

12       Ms. Derry alleges that "Lender charged fees to Petitioner" in excess of RESPA's

13   limits, failed to provide certain documentation, and committed various other "apparent

14   RESPA violations."  [Complaint at 11–13]  She does not identify the specific RESPA

15   provisions Defendants allegedly violated, nor does she provide anything more than

16   conclusory statements.  Such conclusory statements fall far short of her obligation to

17   provide a factual basis to support a RESPA claim.

18       Regardless, any intended RESPA claim fails because it is time-barred under either

19   a 1-year or 3-year statute of limitations.  See Diessner, 618 F. Supp. at 1189.  Ms. Derry

20   obtained the Loan in 2005 and did not file the Complaint until 2010.

21       **K.    Ms. Derry Has No Cause Of Action Under 15 U.S.C. § 45.**

22       Ms. Derry also contends that unspecified "Defendants . . . have engaged in a

23   variety of unfair and unlawful business practices prohibited by 15 USC [sic] Section 45 et

24   seq."  [Complaint at 14]  Ms. Derry fails to identify any specific defendant or provide any

25   facts as to which specific acts were unfair or unlawful pursuant to this statute.

26   Regardless, 15 U.S.C. § 45 empowers the Federal Trade Commission, not individual

27   plaintiffs, to prevent unfair competition and "unfair or deceptive acts or practices in or

28

1   affecting commerce" by bringing a civil lawsuit.  15 U.S.C. §§ 45(a)(2), 45(m)(1)(A),

2   57b(a).  Ms. Derry therefore has no cause of action under 15 U.S.C. § 45.

3       **L.    Ms. Derry Fails To State A Claim For Unjust Enrichment.**

4       Ms. Derry alleges that unspecified "Defendants" were unjustly enriched through

5   various fees and payments "at Petitioner's expense."  [Complaint at 18]  To recover on an

6   unjust enrichment claim under Arizona law, "a claimant must show (1) an enrichment,

7   (2) an impoverishment, (3) a connection between the two, (4) the absence of justification

8   for the enrichment and impoverishment and (5) the absence of any remedy at law."

9   Mousa v. Saba, 222 Ariz. 581, 588, 218 P.3d 1038, 1045 (Ct. App. 2009) (citations

10  omitted).  Importantly, "if there is 'a specific contract which governs the relationship of

11  the parties, the doctrine of unjust enrichment has no application.'"  Trustmark Ins. Co. v.

12  Bank One, 202 Ariz. 535, 542, 48 P.3d 485, 492 (Ct. App. 2002) (quoting Brooks v.

13  Valley Nat'l Bank, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976)).

14      Ms. Derry cannot maintain a claim for unjust enrichment.  As reflected in the

15  Deed of Trust, she had a written contract for the Loan.  Although Ms. Derry chose not to

16  bring a breach of contract action against her original lender, she cannot "seek[ ] to avoid

17  possible contractual limitations on [her] recovery by resorting to an unjust enrichment

18  cause of action."  Trustmark Ins. Co., 202 Ariz. at 543, 48 P.3d at 493.  Thus, she has a

19  legal remedy, and cannot assert unjust enrichment.  Moreover, Ms. Derry received the

20  benefit of the Loan in the form of hundreds of thousands of dollars in loan proceeds.  "A

21  person is not entitled to compensation on the grounds of unjust enrichment if he receives

22  from the other that which it was agreed between them the other should give in return."

23  Brooks, 113 Ariz. at 174, 548 P.2d at 1171 (citing Restatement of Restitution § 107 cmt.

24  1(a)).

25      **M.    Ms. Derry's Quiet Title Claim Cannot Succeed.**

26      Ms. Derry's purported quiet title claim is based on her insufficiently pleaded fraud

27  allegations and her meritless "show me the note" theory.  [See Complaint at 18]  As

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

discussed above, these allegations fail to state any claim for relief.  Regardless, Ms. Derry cannot allege a claim for quiet title because she is in default on the Loan.  "[I]n an action to quiet title, the party invoking the court's jurisdiction is required to do equity and, if it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless he pays off such mortgage lien."  <u>Farrell v. West</u>, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941).  It would be inequitable to permit Ms. Derry to obtain the Loan, enter into the Deed of Trust to secure the Loan, get the full use and enjoyment of the loaned funds, then refuse to repay the Loan and deprive her creditors of all recourse.  Ms. Derry should not be permitted to quiet title to the Property.

**N.     The Court Should Not Grant Leave To Amend.**

The Court need not grant leave to amend where amendment "would be an exercise in futility" or where "the amended complaint would also be subject to dismissal."  <u>Steckman v. Hart Brewing Inc.</u>, 143 F.3d 1293, 1298 (9th Cir. 1988) (affirming denial of leave to amend and dismissal of case with prejudice).  Ms. Derry should not be held to a different standard merely because she is representing herself.  <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1078 (9th Cir. 1986) ("[t]he district court did not err in refusing to allow [pro-se plaintiff] to amend his pleading since the proposed amendment would not overcome" the original pleading's deficiencies).

Ms. Derry has filed at least five complaints in this court asserting the same groundless legal theories.  Nothing in the present Complaint suggests that it can be cured by amendment, and many claims cannot be, because Ms. Derry lacks a private cause of action and because the statutes of limitation have expired.  This pattern of frivolous litigation cannot continue indefinitely.  The Court should enter judgment against Plaintiff without leave to amend.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

680205.1

13

**Relief Requested**

For the foregoing reasons, Defendants respectfully request that the Court enter judgment on the pleadings against Plaintiff.

DATED this 19th day of November, 2010.

BRYAN CAVE LLP

By  /s/ Gregory B. Iannelli
     Robert W. Shely
     Gregory B. Iannelli
     Two North Central Avenue, Suite 2200
     Phoenix, AZ  85004-4406

     Attorneys for Defendants BAC Home Loans Servicing LP and Bank of New York (CWMBS 2006-HYB1) GR2

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA  85004-4406
(602) 364-7000

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on November 19, 2010, I electronically transmitted the

4   attached document to the Clerk's Office using the CM/ECF System for filing

5

6   By: s/ Gregory B. Iannelli

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA  85004-4406
(602) 364-7000

EXHIBIT A

# ADJUSTABLE RATE NOTE

### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 29, 2005        PHOENIX        Arizona
[Date]        [City]        [State]

8058 NORTH 110TH AVENUE, Peoria, AZ 85345
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$ 174,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.000 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on January 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 660029, Dallas, TX 75266-0029

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S.$ 1,016.17 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

DOC #:319891        APPL #:0001077157

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT



-815N (0404)    UM51 0404    Form 5520 3/04

VMP Mortgage Solutions (800)521-7291

Page 1 of 4        Initials: _____

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   December,   2010                     , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   Two  and  One  Quarter                         percentage point(s) (              2.250  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than              12.000  % or less than             2.250  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One                         percentage point(s) (              1.000  %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than      12.000 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of      Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

DOC #:319893                              APPL #:0001077157                                    Form 5520 3/04

VMP®-815N (0404)                               Page 3 of 4                                      Initials: _____

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
YVONNE J DERRY                -Settlor                                            -Borrower

_____ (Seal)       _____ (Seal)
                              -Borrower                                           -Borrower

State: __ARIZONA__   )               **ACKNOWLEDGMENT**
                     ) ss.
County: __MARICOPA__ )

As a Notary Public for said County and State, I do hereby certify that on this __7__ day of __April__ 20 _10_ the above mentioned authorized representative, __Yvonne J. Derry__, appeared before me and executed the foregoing.

_____
Notary Public

My commission expires on __May 21, 2013__

OFFICIAL SEAL
MARY DYSINGER-FRANKLIN
Notary Public – State of Arizona
MARICOPA COUNTY
My Commission Expires May 21, 2013

[Sign Original Only]

DOC #:319894                       APPL #:0001077157

VMP®-815N (0401)                   • Page 4 of 4                              Form 5520 3/04

# ADDENDUM TO NOTE

This addendum is made <u>November 29th, 2005</u> and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

<u>8058 NORTH 110TH AVENUE  Peoria, AZ  85345</u>

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than <u>12.000</u>% or less than <u>2.250</u> %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than <u>1.000</u> percentage point(s) (<u>1.000</u> %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than <u>12.000</u>%. My interest rate will never be less than <u>2.250</u> %.

## UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. This loan is not assumable. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

1201 LIBOR Addendum to Note
Doc # 944276/ Image: 944276.prn  App# 0001077157                    AHM-2010R(MULT) (10/05)

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

To the extent the provisions of this addendum conflict with the provisions of the Note, Security Instrument or Adjustable Rate Rider, this Addendum shall control.

In Witness Thereof, Trustor has executed this addendum.

_Christine Cipode_
Witness

_4/7/2010_
Date

_Yvonne J. Derry_
Settlor signature   YVONNE J DERRY

---

State: __ARIZONA__            )                    **ACKNOWLEDGMENT**
                             ) ss.
County: __MARICOPA__         )

As a Notary Public for said County and State, I do hereby certify that on this __7__ day of __APRIL__ 20 __10__ the above mentioned authorized representative, __YVONNE J. DERRY__, appeared before me and executed the foregoing.

Notary Public
My commission expires on __May 21, 2013__

OFFICIAL SEAL
MARY DYSINGER-FRANKLIN
Notary Public – State of Arizona
MARICOPA COUNTY
My Commission Expires May 21, 2013

1201 LIBOR Addendum to Note
Doc # 944539/ Image: 944539.prn  App# 0001077157

AHM-2010R(MULT) (10/05)

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
#### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 29th   day of   November, 2005   , and is incorporated   into and shall   be deemed   to amend   and   supplement   the Mortgage, Deed of Trust, or Security Deed (the "Security   Instrument")   of the same date given by the undersigned   (the "Borrower")   to secure   the Borrower's   Adjustable   Rate Note (the "Note") to American Brokers Conduit

(the   "Lender")   of the   same   date   and   covering   the property   described   in the Security Instrument and located at:
8058 NORTH 110TH AVENUE, Peoria, AZ  85345

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition   to the covenants   and agreements   made   in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides   for an initial interest  rate of               7.000   %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change  Dates
The interest   rate I will pay may change   on the first day of   December, 2010               , and may change   on that day every sixth month  thereafter.   Each date on which  my interest rate could change is called a "Change Date."

DOC #:319901         APPL #:0001077157
MULTISTATE  ADJUSTABLE   RATE RIDER 6-Month  LIBOR Index (Assumable     during Life of Loan) (First  Business   Day Lookback)  - Single  Family - Freddie  Mac UNIFORM INSTRUMENT     UM51 0404
**VMP**®-815R  (0404)   Form 5120 3/04

Page 1 of 4           Initials: _____
VMP Mortgage Solutions
(800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal . The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    Two and One Quarter
percentage point(s) (        2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       12.000 % or less than          2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
One                      percentage point(s) (        1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than        12.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

DOC #:319902          APPL #:0001077157

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

     If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

     To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

     If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DOC #:319903        APPL #:0001077157

Initials: _____

VMP®-815R (0404)        Page 3 of 4        Form 5120 3/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Yvonne J. Derry_____ (Seal)
YVONNE J DERRY                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

DOC #:319904          APPL #:0001077157

(VMP)-815R (0404)          Page 4 of 4          Form 5120 3/04

State: __ARIZONA__        )          **ACKNOWLEDGMENT**
                          ) ss.
County: __MARICOPA__      )

As a Notary Public for said County and State, I do hereby certify that on this __7__ day of __APRIL__ 20_10_ the above mentioned authorized representative, __YVONNE J. DERRY__, appeared before me and executed the foregoing.

Notary Public
My commission expires on __May 21, 2013__

OFFICIAL SEAL
MARY DYSINGER-FRANKLIN
Notary Public – State of Arizona
MARICOPA COUNTY
My Commission Expires May 21, 2013

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made __November 29th, 2005_____ and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

8058 NORTH 110TH AVENUE  Peoria, AZ  85345

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than _12.000_% or less than _2.250_ %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than _1.000_ percentage point(s) (_1.000_ %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than _12.000_%. My interest rate will never be less than _2.250_ %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. This loan is not assumable. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

To the extent the provisions of this addendum conflict with the provisions of the Note, Security Instrument or Adjustable Rate Rider, this Addendum shall control.

In Witness Thereof, Trustor has executed this addendum.

_Christine Tripodi_
Witness

4/7/2010
Date

Settlor Signature   YVONNE J DERRY

State: ARIZONA          )                **ACKNOWLEDGMENT**
                        ) ss.
County: MARICOPA        )

As a Notary Public for said County and State, I do hereby certify that on this 7 day of April 20 10 the above mentioned authorized representative, yvonne J. Derry , appeared before me and executed the foregoing.

Notary Public
My commission expires on May 21, 20,3

> OFFICIAL SEAL
> MARY DYSINGER-FRANKLIN
> Notary Public -- State of Arizona
> MARICOPA COUNTY
> My Commission Expires May 21, 2013

1201 LIBOR Addendum to Note
Doc # 944539/ Image: 944539.prn  App# 0001077157

AHM-2010R(MULT) (10/05)

# INTEREST-ONLY ADDENDUM
## ADJUSTABLE RATE RIDER

THIS INTEREST-ONLY ADDENDUM is made this ___29th___ day of ___November___, ___2005___, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ___American Brokers Conduit___ ("Lender") of the same date and covering the property described in the Security Instrument and located at: ___8058 NORTH 110TH AVENUE, Peoria, AZ 85345___.

[Property Address]

**THIS ADDENDUM SUPERSEDES** Section 3(A) and (B), Section 4(G) of the Note. None of the other provisions of the Note are changed by this addendum.

3.      **PAYMENTS**

(A)      **Time and Place of Payments**

I will make a payment on the first day of every month beginning ___January 1, 2006___. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as describe in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on ___December 1, 2035___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: ___PO Box 660029, Dallas, TX 75266-0029___ ___or at a different place if required by the Note Holder.

(B)      **Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ ___1,016.17___ before the First Principal and Interest Payment Due Date, and thereafter will be in amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

4.      **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(G)      **Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be ___January 1, 2016___.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum.

_____ (Seal)
YVONNE J DERRY                      Borrower

_____ (Seal)
                                    Borrower

_____ (Seal)
                                    Borrower

_____ (Seal)
                                    Borrower

_____ (Seal)
                                    Borrower

_____ (Seal)
                                    Borrower

_____ (Seal)
                                    Borrower

_____ (Seal)
                                    Borrower

*[Sign Original Only]*

State: ARIZONA          )
                        ) ss.        **ACKNOWLEDGMENT**
County: MARICOPA        )

As a Notary Public for said County and State, I do hereby certify that on this 7 day of APRIL 20 10 the above mentioned authorized representative, yvoNNE J. Derry , appeared before me and executed the foregoing.

Notary Public
My commission expires on _____May 21, 2013_____



OFFICIAL SEAL
MARY DYSINGER-FRANKLIN
Notary Public – State of Arizona
MARICOPA COUNTY
My Commission Expires May 21, 2013

AHM-2020R (09/05)

EXHIBIT B



```
610  124746011  D2  001  003
```
12474 6011

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20051854858  12/07/2005 15:43
9194760-30-3-2
ELECTRONIC RECORDING

Prepared By:
Vicky Hoekstra
7310 N. 16th Street
Suite 110
Phoenix, AZ
85020

**Premier Title Group**

9194·760·KH  [Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100024200010771570

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 29, 2005
together with all Riders to this document.
**(B) "Borrower"** is YVONNE J DERRY, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
91 DAYTON LANE, EAST HAMPTON, NY  11937
**(C) "Lender"** is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:325181                     APPL #:0001077157

**ARIZONA** -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Form 3003 1/01
(rev. 6/02)

-6A(AZ) (0205)
Page 1 of 15  UM31 9907.04  Initials:

VMP MORTGAGE FORMS - (800)521-7291

30

Lender's mailing address is    538 Broadhollow Road, Melville, NY   11747

(D) **"Trustee"** is   TITLE SECURITY AGENCY OF ARIZONA
. Trustee's mailing address is
2525 EAST CAMELBACK ROAD #600, Phoenix, AZ   85016

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated   November 29, 2005                          .
The Note states that Borrower owes Lender  One Hundred Seventy Four Thousand Two
Hundred and No/100                                                                         Dollars
(U.S. $174,200.00             ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    December 1, 2035            .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

*Addendum to Adjustable Rate Interest Only Addendum*

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

DOC  #:325182                          APPL #:0001077157

-6A(AZ) (0209)                          Page 2 of 15                    Initials:           Form 3003  1/01  (rev. 6/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Maricopa :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 81, OF SUNCLIFF PHASE 5, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 569 OF MAPS, PAGE 41.

Parcel ID Number: 142-74-093                          which currently has the address of
8058 NORTH 110TH AVENUE                                                  [Street]
Peoria                                      [City], Arizona 85345        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

DOC #:325183                    APPL #:0001077157

VMP®-6A(AZ) (0205)                       Page 3 of 15             Initials: [signature]   Form 3003  1/01 (rev. 6/02)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC    #:325186                          APPL #:0001077157

-6A(AZ) (0205)                          Page 6 of 15                    Initials: ___    Form 3003  1/01  (rev. 6/02)

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC  #:325187               APPL #:0001077157

VMP®  -6A(AZ) (0205)              Page 7 of 15                Initials: [signature]  Form 3003  1/01  (rev. 6/02)

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

DOC #:325188          APPL #:0001077157

-6A(AZ) (0205)                    Page 8 of 15                    Initials:          Form 3003  1/01  (rev. 6/02)

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

DOC  #:325189                     APPL #:0001077157

Initials: ___

-6A(AZ) (0205)              Page 9 of 15                    Form 3003  1/01  (rev. 6/02)

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC  #:325190              APPL #:0001077157



-6A(AZ) (0205)              Page 10 of 15              Initials:              Form 3003 1/01 (rev. 6/02)

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower´s Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:325192

-6A(AZ)  (0206)

APPL #:0001077157

Page 12 of 15

Initials:

Form 3003  1/01  (rev. 6/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

DOC #:325193                    APPL #:0001077157

-6A(AZ) (0205)                    Page 13 of 15          Initials: _____   Form 3003  1/01 (rev. 6/02)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
YVONNE J DERRY          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

DOC  #:325194              APPL #:0001077157

VMP-6A(AZ) (0205)          Page 14 of 15              Form 3003  1/01  (rev. 6/02)

**STATE OF ARIZONA,** MARICOPA County ss:

The foregoing instrument was acknowledged before me this ~~Nov. 30, 2005~~

by YVONNE J DERRY

My Commission Expires: 7-31-06



SHERRI NEICE
Notary Public – Arizona
Maricopa County
Expires 07/31/06

_____
Notary Public

DOC #:325195      APPL #:0001077157

-6A(AZ) (0205)      Page 15 of 15      Initials: _____ Form 3003 1/01 (rev. 6/02)

# ADJUSTABLE RATE RIDER

**(6-Month LIBOR Index - Rate Caps)**
**(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)**

THIS ADJUSTABLE RATE RIDER is made this 29th day of November, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to American Brokers Conduit

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
8058 NORTH 110TH AVENUE, Peoria, AZ 85345

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 7.000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the first day of December, 2010 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

DOC #:319901          APPL #:0001077157
**MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback)** - Single Family - Freddie Mac UNIFORM INSTRUMENT      UM51 0404
VMP®-815R (0404)   Form 5120 3/04
Page 1 of 4          Initials:
VMP Mortgage Solutions
(800)521-7291

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal . The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding    Two and One Quarter
percentage point(s) (            2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than      12.000 % or less than            2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
One                      percentage point(s) (            1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than      12.000 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

DOC #:319902          APPL #:0001077157

Initials: _____

-815R  (0404)                    Page 2 of 4                    Form 5120 3/04

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DOC #:319903            APPL #:0001077157

Initials: _____

VMP®-815R (0404)            Page 3 of 4            Form 5120 3/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
YVONNE J DERRY                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

DOC #:319904              APPL #:0001077157

VMP -815R  (0404)              Page 4 of 4              Form 5120 3/04

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made_____November 29th, 2005_____ and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

8058 NORTH 110TH AVENUE  Peoria, AZ  85345

**AMENDED PROVISIONS**

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.000% or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than 1.000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 12.000%. My interest rate will never be less than 2.250 %.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. This loan is not assumable. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

1202 LIBOR Addendum to Rider
Doc # 944277/ Image: 944277.prn  App# 0001077157

AHM-2011R(Mult) (10/05)

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

To the extent the provisions of this addendum conflict with the provisions of the Note, Security Instrument or Adjustable Rate Rider, this Addendum shall control.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____November 29, 2005_____        _____
Date                                  Borrower Signature   YVONNE J DERRY

1201 LIBOR Addendum to Rider
Doc # 944540/ Image: 944540.prn  App# 0001077157

AHM-2010R(MULT) (10/05)

# INTEREST-ONLY ADDENDUM
## ADJUSTABLE RATE RIDER

THIS INTEREST-ONLY ADDENDUM is made this ___29th___ day of ___November___, ___2005___, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ___American Brokers Conduit___ ("Lender") of the same date and covering the property described in the Security Instrument and located at: ___8058 NORTH 110TH AVENUE, Peoria, AZ 85345___.

[Property Address]

**THIS ADDENDUM SUPERSEDES** Section 3(A) and (B), Section 4(G) of the Note.  None of the other provisions of the Note are changed by this addendum.

**3.      PAYMENTS**

**(A)     Time and Place of Payments**

I will make a payment on the first day of every month beginning ___January 1, 2006___. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as describe in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on ___December 1, 2035___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: ___PO Box 660029, Dallas, TX 75266-0029___ _____ or at a different place if required by the Note Holder.

**(B)     Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ ___1,016.17___ before the First Principal and Interest Payment Due Date, and thereafter will be in amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**4.      ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(G)     Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be ___January 1, 2016___.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum.

_____ (Seal)
YVONNE J DERRY              Borrower

_____ (Seal)
                           Borrower

_____ (Seal)
                           Borrower

_____ (Seal)
                           Borrower

_____ (Seal)
                           Borrower

_____ (Seal)
                           Borrower

_____ (Seal)
                           Borrower

_____ (Seal)
                           Borrower

*[Sign Original Only]*

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this   29th                        day of
November, 2005                           , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
American Brokers Conduit

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

8058 NORTH 110TH AVENUE, Peoria, AZ  85345

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in   The Deed, The Declaration
of Covenants, Conditions and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
SUNCLIFF PHASE 5

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

DOC #:319821       APPL #:0001077157
MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                UM31 0008                    Page 1 of 3                        Initials:
VMP®-7R (0008)                   VMP MORTGAGE FORMS - (800)521-7291                        Form 3150 1/01

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

DOC   #:319822        APPL #:0001077157

Initials:

-7R  (0008)                   Page 2 of 3                              Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
YVONNE J DERRY                   -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower.                                     -Borrower

DOC  #:319823        APPL #:0001077157

VMP®-7R (0008)                    Page 3 of 3                    Form 3150 1/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this    29th        day of  November, 2005               ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to   American Brokers Conduit

                                                                                (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
8058 NORTH 110TH AVENUE, Peoria, AZ  85345

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity,
gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus,
plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods,
attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.
All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if
the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

DOC  #:319831            APPL #:0001077157
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: _____

UM31 0008           Page 1 of 4                                          Form 3170 1/01
VMP-57R (0008)        VMP MORTGAGE FORMS - (800)521-7291

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER´S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER´S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

DOC  #:319832              APPL #:0001077157

Initials: _____

Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

DOC   #:319833           APPL #:0001077157

Initials: _____   Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Yvonne J. Derry_ (Seal)
YVONNE  J  DERRY            -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

DOC  #:319834                    APPL #:0001077157
UMP-57R (0008)                        Page 4 of 4              Form 3170 1/01

EXHIBIT C

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082
WHEN RECORDED MAIL TO:
BAC HOME LOANS SERVICING, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065
Attn: FORECLOSURE DEPT

CERTIFIED A TRUE COPY OF THE
ORIGINAL DOCUMENT RECORDED
01/22/2010 AS INSTRUMENT No.
20100057057 AND DOCKET _____
AND PAGE _____

TS No.  10-0003677
Title Order No.  4355653
APN No.  142-74-093-7

## NOTICE OF TRUSTEE'S SALE ARIZONA

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust Recorded on 12/07/2005, as Instrument Number 20051854858, Book N/A, Page N/A, in the records of Maricopa County, Arizona, at public auction to the highest bidder:  In the Courtyard, by the main entrance of the Superior Court Building, 201 West Jefferson, Phoenix, AZ 85003  on 04/27/2010 at 12:00 PM of said day.

LOT 81, OF SUNCLIFF PHASE 5, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 569 OF MAPS, PAGE 41.  APN No.  142-74-093-7

The Deed of Trust and/or Beneficiary provide the following purported property location:
8058 NORTH 110TH AVENUE, PEORIA, Maricopa County, AZ 85345

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances , to pay the remaining principal sum of the note secured by said Deed of Trust, which includes interest thereon as provided in said note, advances, if any under the terms of said Deed of Trust, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Deed of Trust.  The original sum of the note is $174,200.00.  Trustee will accept only cash or cashier's check for reinstatement or price bid payment.  Reinstatement payment must be paid before five o'clock P.M on the last day other than a Saturday or legal holiday before the date of the sale.  The Purchaser at the sale, other than the beneficiary to the extent of his credit bid, shall pay the price no later than five o'clock P.M. of the following day, other than a Saturday or legal holiday.

Name and Address of Original Trustor:  YVONNE J DERRY, 8058 NORTH 110TH AVENUE, PEORIA, AZ 85345
Name and Address of Current Trustee:  RECONTRUST COMPANY, N.A., 2380 Performance Dr, TX2-985-07-03 Richardson, TX  75082 FOR INFORMATION/SALE INFORMATION CALL:  (800) 281-8219

Name and Address of Current Beneficiary:  BANK OF NEW YORK. 400 COUNTRYWIDE WAY  SV-35, , SIMI VALLEY, CA 93065 PHONE: (800) 669-6650

RECONTRUST COMPANY, N.A. IS THE CURRENT TRUSTEE   RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5., BECAUSE IT IS A NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE CURRENCY("OCC")

*Form azmlngnos (08/06)*